Andrew Muscato
Of Counsel:
Jay B. Kasner
Kurt Wm. Hemr
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
(A Delaware Limited Liability Partnership)
Four Times Square
New York, New York  10036
Tel:  (212) 735-3000
Fax: (212) 735-2000

*Attorneys for Defendant AXA Equitable*
*Life Insurance Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ARLENE SHUSTER, on behalf of herself and
all others similarly situated,                          :

                              Plaintiff,      :    Civil Action No._____

                  v.                :    (State Court Docket No. L-4485-14
                                          (Camden County))

AXA EQUITABLE LIFE INSURANCE          :
COMPANY,                                               **NOTICE OF REMOVAL**

                                :
                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF NEW JERSEY

       PLEASE TAKE NOTICE that Defendant AXA Equitable Life Insurance Company

("Defendant" or "AXA Equitable"), with its principal place of business at 1290 Avenue of the

Americas, New York, New York 10104, through its undersigned counsel, hereby removes the

above-captioned action brought by Plaintiff Arlene Shuster, who alleges that she is a resident of

Cherry Hill, New Jersey, from the Superior Court of New Jersey, Law Division, Camden County

to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1446

and the removal provision of the Securities Litigation Uniform Standards Act of 1998

("SLUSA"), 15 U.S.C. § 78bb(f)(2).

In support of this Notice of Removal, Defendant states as follows:

## BASIS FOR REMOVAL

1.      On November 17, 2014, Plaintiff Arlene Shuster commenced this purported class

action in the Superior Court of New Jersey, Law Division, Camden County.  Pursuant to 28

U.S.C. § 1446(a) and Local Civil Rule 5.2, a true and correct copy of the Summons and

Complaint is attached hereto as Exhibit 1.[1]

2.      Plaintiff purports to represent a nationwide class of AXA Equitable variable life

insurance policy holders whose account value was invested in SEC-registered investment trusts

that employed a "volatility management" investment strategy.   (See Compl. (Ex. 1), ¶ 2.)

3.      As explained infra (¶¶ 20-35), Plaintiff's claim alleges "a misrepresentation … of

a material fact in connection with the purchase or sale of a covered security," 15 U.S.C.

§ 78bb(f)(1)(A), as well as a "manipulative or deceptive device or contrivance," 15 U.S.C.

§ 78bb(f)(1)(B).   Her claim is therefore removable under the removal provision of the Securities

Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(2).

4.      Pursuant to 15 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed

promptly with the Clerk of the Superior Court of New Jersey, Law Division, Camden County

and served upon counsel for Plaintiff.

---

[1]   Also attached hereto as Exhibit 2 is a true and correct copy of the docket of the Superior
   Court of New Jersey, Law Division, Camden County in this action.  Also attached hereto as
   Exhibit 3, pursuant to 28 U.S.C. § 1446(a), is a true and correct copy of an Affidavit of
   Service filed in this action with that same court on December 4, 2014.

## PERTINENT PROCEDURAL BACKGROUND

**Counsel Representing Plaintiff Here Have Previously Filed
Three Class Actions Addressing The Same Threshold Legal Issues,
One Of Which Is Now Pending In The Southern District Of New York**

5.      Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") — a law firm

located in White Plains, New York — is counsel for Plaintiff in this action.  This action (the

"Shuster action") is the fourth putative class action commenced in 2014 by Lowey Dannenberg

concerning AXA Equitable variable life insurance products.

6.      In May 2014, Lowey Dannenberg commenced two putative class actions in the

Southern District of New York on behalf of holders of AXA Equitable variable annuities:

    (i)      On May 2, 2014, Lowey Dannenberg commenced a putative class action on
        behalf of a New York resident, captioned as Zweiman v. AXA Equitable, 14-cv-
        3128 (VSB) (DCF) ("Zweiman I").

    (ii)     On May 15, 2014, Lowey Dannenberg commenced a second putative class action,
        this time on behalf of a New Jersey resident, captioned as Swallow v. AXA
        Equitable, 14-cv-3505 (VSB) (DCF).

7.      At about that same time, two other putative class actions substantially similar to

Zweiman I and Swallow were also commenced in the Southern District of New York by other

holders of AXA Equitable variable annuities.[2]

8.      The complaints in all four of those actions asserted that the district court had

subject matter jurisdiction over those actions under the Class Action Fairness Act ("CAFA"), 28

U.S.C. §§ 1332(d) and 1453.  All four actions were assigned to the Hon. Vernon S. Broderick of

the Southern District of New York.

9.      On June 16, 2014, AXA Equitable informed Judge Broderick of its intent to move

to dismiss the four actions for lack of subject matter jurisdiction, for the reason that the variable

---

[2]   The other two being O'Donnell v. AXA Equitable, 14-cv-2209 (VSB) (DCF), and Cabral v.
    AXA Equitable, 14-cv-3715 (VSB) (DCF), both in the Southern District of New York.

annuity contracts at issue in those actions were "covered securities" within the meaning of SLUSA and thus fell within an exception to CAFA's grant of jurisdictional authority.[3]  Having been so apprised, all four plaintiffs voluntarily dismissed their actions on June 19, 2014.[4]

10.    On that same date, Lowey Dannenberg, together with counsel for plaintiffs in the other two actions, filed yet another putative class action against AXA Equitable, again on behalf of Jessica Zweiman but this time in New York state court under the caption Jessica Zweiman, Executrix of the Estate of Anne Zweiman, on behalf of herself and all others similarly situated v. AXA Equitable Life Insurance Company ("Zweiman").  A copy of the Zweiman complaint is attached hereto as Exhibit 4.

11.    On July 3, 2014, Defendant AXA Equitable filed a Notice of Removal in the Southern District of New York to remove Zweiman from state court to federal court pursuant to the removal provision of SLUSA, 15 U.S.C. § 78bb(f)(2).  (A copy of that Notice of Removal is attached hereto as Exhibit 5.)

12.    On July 21, 2014, following assignment of the removed Zweiman action to Judge Broderick as related to the four previously-filed and voluntarily dismissed federal actions, AXA Equitable informed the court of its intention to move to dismiss the action on the ground that the claim asserted therein was precluded by SLUSA, and on other grounds.  At Zweiman's request, Judge Broderick directed that AXA Equitable present a motion to dismiss in Zweiman based

---

[3]    O'Donnell, 14-cv-2209 (VSB) (DCF), D.E. 16.

[4]    O'Donnell, 14-cv-2209 (VSB) (DCF), D.E. 17; Zweiman I, 14-cv-3505 (VSB) (DCF), D.E. 12; Swallow, 14-cv-3505 (VSB) (DCF), D.E. 7; Cabral, 14-cv-3715 (VSB) (DCF), D.E. 11.

only on SLUSA preclusion grounds, and deferred consideration of any other grounds for

dismissal.[5]

13.    On July 30, 2014, Zweiman filed a motion to remand that action to state court,

contending that her action was not governed by SLUSA.

14.    The parties in Zweiman completed briefing on the motions to dismiss and to

remand on September 25, 2014.[6]  Those motions are now sub judice.

**The Newly-Filed *Shuster* Action Is Substantially Similar To
The *Zweiman* Action Pending In The Southern District Of New York**

15.    The Zweiman and Shuster complaints make many of the same allegations, except

that where Zweiman purports to represent a class of variable *annuity* holders, Shuster purports to

represent a class of variable *life insurance policy* holders.

16.    Variable annuities and variable life insurance policies are "'hybrid products,'

possessing characteristics of both insurance products and investment securities."  Lander v.

Hartford Life & Annuity Ins. Co., 251 F.3d 101, 105 (2d Cir. 2001) (holding that variable

annuities are "covered securities" under SLUSA).  The account values of variable annuities (the

product at issue in Zweiman) and variable life insurance policies (the product at issue in Shuster)

are invested in separate accounts maintained by AXA Equitable that are registered with the U.S.

Securities & Exchange Commission.  Investors in those variable life insurance products may

---

[5]    Zweiman, 14-cv-5012 (VSB)(DCF), D.E. 25, at 18:16-24.

[6]    Zweiman, 14-cv-5012 (VSB)(DCF), D.E. 11 (AXA Equitable's letter to Judge Broderick
      stating intent to move to dismiss); D.E. 16-18 (plaintiff's motion to remand); D.E. 27-29
      (AXA Equitable's opposition to motion to remand and cross-motion to dismiss); D.E. 30
      (plaintiff's reply in support of motion to remand and opposition to cross-motion to dismiss);
      D.E. 31 (AXA Equitable's reply in support of motion to dismiss).  A copy of the docket in
      Zweiman is attached hereto as Exhibit 6.

allocate the account value of those products among investments within the separate accounts similar to mutual funds.

17.      The <u>Zweiman</u> and <u>Shuster</u> complaints both address the use of a "volatility management" investment strategy in certain portfolios of those separate accounts. Those portfolios were designed to track well-known equity market indexes except during periods of high volatility, when the portfolio's holdings would be managed to limit equity exposure to the index.  This investment strategy of reducing exposure to the market in times of high volatility is generally known as "volatility management" (and is referred to in <u>Zweiman</u> as the "ATM Strategy").

18.      The <u>Zweiman</u> and <u>Shuster</u> complaints both assert breach of contract claims contending that (i) AXA Equitable implemented a volatility management investment strategy; (ii) that investment strategy was implemented in violation of New York law, for the reason that AXA Equitable made misleading filings concerning that strategy with the New York Department of Financial Services ("DFS"); (iii) AXA Equitable had contractually promised to comply with applicable law; (iv) AXA Equitable's purported violation of law constitutes a breach of that contractual promise; and (v) plaintiff has suffered damages which may be measured by the diminished investment returns purportedly flowing from the use of that investment strategy:

| *Zweiman* alleges … | … *Shuster* likewise alleges: |
|---|---|
| **(i)**  "Sometime between 2009 and 2011 — after plaintiff's purchase of the variable annuity — AXA began implementing the ATM Strategy for the sole purpose of reducing AXA's exposure to market volatility …"  (Ex. 4, ¶ 11.) | "In 2009, 2010, and 2011, AXA began implementing a volatility-management strategy in certain investment funds (the 'Affected Funds') offered to Plaintiff and other holders of variable life insurance." (Compl. (Ex. 1), ¶ 17.) |

6

| ***Zweiman* alleges …** | **… *Shuster* likewise alleges:** |
|---|---|
| **(ii)** "As found by the DFS, … AXA violated New York law in connection with its implementation of the ATM Strategy.  See Consent Order dated March 17, 2014, submitted herewith as Exhibit A."  (Ex. 4, ¶ 13.) | "The DFS found that AXA violated N.Y. Ins. Law § 4240(e) in connection with its implementation of the volatility-management strategy.  See Consent Order dated March 17, 2014, submitted herewith as Exhibit B."  (Compl. (Ex. 1), ¶ 29.) |
| **(iii)** "In its contracts with plaintiff and the other members of the Class, AXA covenanted that it would comply with all applicable laws, including New York law."  (Ex. 4, ¶ 13.) | "Plaintiff's Contract provides that AXA would comply with all applicable laws, including New York law in operating the Separate Account and investment divisions comprising the Separate Account."  (Compl. (Ex. 1), ¶ 20.) |
| **(iv)** "AXA breached the terms of the variable deferred annuities held by plaintiff and the Class by implementing the ATM Strategy in violation of New York law."  (Ex. 4, ¶ 20.) | "AXA breached the terms of the variable life insurance policies held by Plaintiff and the Class by implementing the volatility-management strategy without obtaining prior approval of the N.Y. Superintendent of Insurance, in violation of N.Y. Ins. Law § 4240(e)."  (Compl. (Ex. 1), ¶ 37.) |
| **(v)** "[D]uring the period 2010 through 2012, there was a sharp divergence in performance between two equivalent investments that was attributable to the use of the ATM Strategy.  Specifically, the investment without the ATM Strategy generated approximately 11.5 percent higher returns during this period than the investment that utilized the ATM Strategy."  (Ex. 4, ¶ 5.) | "AXA's implementation of the volatility-management strategy reduced the returns of the Affected Funds held by Plaintiff and the other members of the Class.  The charts below demonstrate the volatility-management strategy's impact on the Affected Funds compared to benchmarks used by AXA based on a hypothetical $10,000 investment during the period of 2010 through 2012."  (Compl. (Ex. 1), ¶¶ 30-31.) |

19.    Because of the common allegations in the Shuster and Zweiman complaints, the

Shuster action is also subject to removal under SLUSA for the same reasons as the Zweiman

action.  (See ¶¶ 20-35 infra.)  The arguments of counsel regarding the application of SLUSA to

the claim asserted by this Plaintiff have already been fully briefed in the Southern District of

New York in motions that are sub judice.  Accordingly, to avoid the inconsistency and

inefficiency that could result from duplicative litigation of the same threshold legal issues in two

courts, Defendant will promptly move this Court to transfer the <u>Shuster</u> action to the Southern

District of New York pursuant to 28 U.S.C. § 1404(a).

**PLAINTIFF'S ACTION IS REMOVABLE UNDER SLUSA**

20.     SLUSA, codified in the Securities Exchange Act of 1934 at 15 U.S.C. § 78bb(f),

promotes the uniform application of federal disclosure standards for securities, including by

providing for the removal to federal court of certain putative class actions asserting claims

involving "covered securities."  <u>See generally</u> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v.</u>

<u>Dabit</u>, 547 U.S. 71, 82-84 (2006) ("<u>Dabit</u>").

21.     Specifically, SLUSA provides that "[a]ny covered class action brought in any

State court involving a covered security, as set forth in paragraph (1), shall be removable to the

Federal district court for the district in which the action is pending."  15 U.S.C. § 78bb(f)(2); <u>see</u>

<u>Dabit</u>, 547 U.S. at 83 n.7; <u>Rowinski v. Salomon Smith Barney Inc.</u>, 398 F.3d 294, 299 (3d Cir.

2005).  For the reasons set forth below, the <u>Shuster</u> action is a "covered class action … involving

a covered security" within the scope of paragraph (1) of that subsection, 15 U.S.C. § 78bb(f)(1),

and therefore removal to this United States District Court is proper.

**Plaintiff's Action Is A Covered Class Action**

22.     SLUSA defines a "covered class action" as:

> [A]ny single lawsuit in which … one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. § 78bb(f)(5)(B)(i)(II).

23.     The <u>Shuster</u> action is alleged to be a covered class action.  Plaintiff seeks to

recover damages on a representative basis for herself and others similarly situated and alleges

that "[t]he Class is so numerous that joinder of all members is impracticable."  (Compl. (Ex. 1),

8

¶ 33(a).)  The Complaint also alleges that common questions of law or fact predominate over individual questions.  (Compl. (Ex. 1), ¶ 34.)  Significantly, Plaintiff's counsel in Zweiman acknowledged that the Zweiman action was a covered class action under SLUSA.[7]

24.    The Shuster action also falls within the scope of 15 U.S.C. § 78bb(f)(1), because, for the reasons discussed infra, it must be read to allege both:

(A)    a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; [and]

(B)    that the defendant [AXA Equitable] used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

### Plaintiff's Action Concerns A "Covered Security"

25.    The Shuster action concerns a covered security, i.e., a variable life insurance policy.  See Securities Act Release No. 33-5360, [1972-1973 Decisions] Fed. Sec. L. Rep (CCH), at *4 ("[T]he Commission has determined that a variable life contract would be a security."); Roth v. Am. Family Mut. Ins. Co., 567 F.3d 884, 886 (7th Cir. 2009) (explaining that variable life insurance policies are securities); Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1255 (11th Cir. 2003) (per curiam) (holding that a variable life insurance policy is a "covered security" under SLUSA).  Likewise, Plaintiff's counsel in Zweiman acknowledged that the variable annuity at issue in that case was a covered security under SLUSA.[8]

26.    Investors in variable life insurance policies may allocate their account value among investments similar to mutual funds, and thereafter may reallocate their account value from time to time.  A variable life insurance policy holder's allocation of his or her contract value to those various investment options causes units of an SEC-registered separate account to be

---

[7]    Zweiman, D.E. 17, at 7.

[8]    Zweiman, D.E. 17, at 7.

invested in SEC-registered investment companies.  (See Compl. (Ex. 1), Ex. A, p. 11 ("Amounts allocated, transferred or added to an investment division of our [separate account] are used to purchase units of that division …").)  Those units are also "covered securities."  In re Mut. Funds Inv. Litig., 437 F. Supp. 2d 349, 443-44 (D. Md. 2006), aff'd, 309 F. App'x 722 (4th Cir.), cert. denied sub nom. Wiggenhorn v. AXA Equitable Life Ins. Co., 558 U.S. 817 (2009).  Plaintiff's counsel in Zweiman did not dispute that that those units are a covered security under SLUSA.[9]

### Plaintiff's Action Alleges A "Misrepresentation Or Omission Of A Material Fact In Connection With The Purchase Or Sale Of A Covered Security"

27.      The Third Circuit has held that regardless of the particular language that a plaintiff uses to plead an action, that action is removable pursuant to SLUSA if it is a covered class action alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security":

> SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.  In this context — where Congress has expressly preempted a particular class of state law claims — the question is not whether a plaintiff pleads or omits certain key words or legal theories, but rather whether a reasonable reading of the complaint evidences allegations of "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."

Rowinski, 398 F.3d at 304.  The Third Circuit explained that although the plaintiff in Rowinski "scrupulously avoid[ed] pleading [certain] words … a reasonable reading of the complaint … establishes that the elements of SLUSA preemption are satisfied."  Id. at 304-05.  The applicability of SLUSA thus "does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another."  Id. at 300.  Here, even though Plaintiff "scrupulously avoid[ed] pleading" the words "misrepresentation," "omission," or "manipulative or deceptive device," a

---

[9]    See Zweiman, D.E. 31, at 7.

"reasonable reading of [her] complaint . . . establishes that the elements of SLUSA preemption are satisfied."  Id. at 304-05.

28.     Plaintiff's variable life insurance policy, like the variable annuity contract in Zweiman, requires notification to policy holders in the event of a material change in the investments of the separate account in which the policy's account value is invested.  (Compl. (Ex. 1), Ex. A, at 15 ("If any of these changes result in a material change in the underlying investments of an investment division of our [separate account], we will notify you of such change, as required by law.").)  Plaintiff's Complaint alleges that AXA Equitable changed the investment policy in the separate account in which her policy's account value was invested. (Compl. (Ex. 1), ¶¶ 26-27.)  To the extent that Plaintiff seeks to allege that AXA Equitable breached her policy's notification provision by failing to inform her of that change in investment policy, thereby causing her to hold units of the separate account that she otherwise might have sold, she alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A); Dabit, 547 U.S. at 75, 86 ("holder" class actions precluded by SLUSA).  Plaintiff's counsel expressly alleged a breach of that notification provision in the Zweiman I and Swallow actions.[10]  See Rowinski, 398 F.3d at 304 ("the question is not whether a plaintiff pleads or omits certain key words or legal theories").

29.     Plaintiff also pleads a "misrepresentation or omission" when she alleges that "AXA presented the volatility-management strategy as a 'routine' matter in its filing to the [DFS]."  (See Compl. (Ex. 1), ¶ 28 (emphasis added).)  Those allegations are an essential "factual predicate" of her claim:  Plaintiff asserts that AXA Equitable breached her contract by failing to present a new investment strategy to the DFS accurately, allegedly in violation of New

---

[10]   Zweiman I, D.E. 2, ¶¶ 60(c), 68(d); Swallow, D.E. 2, ¶¶ 60(c), 68(d).

York law.  Rowinski, 398 F.3d at 300 ("Where, as here, allegations of a material

misrepresentation serve as the factual predicate of a state law claim, the misrepresentation prong

is satisfied under SLUSA.").

30.	Plaintiff's Complaint further alleges that those purported misrepresentations were

"in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1)(A).   In

its recent decision in Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058, 1066 (2014), the

Supreme Court observed that "a connection matters where the misrepresentation makes a

significant difference to someone's decision to purchase or to sell a covered security."  Plaintiff

makes precisely that allegation here.

31.	In particular, Plaintiff appends as Exhibit B to her Complaint a Consent Order

entered into between the DFS and AXA Equitable, in which the DFS stated:

> The absence of detail and discussion in [AXA Equitable's] filings [with the DFS] regarding the significance of the implementation of the ATM Strategy had the effect of misleading the Department regarding the scope and potential effects of the ATM Strategy on the relevant funds and the possible consequences for policyholders.
>
> DFS approved the filings because it was led to believe that the changes were merely routine additions of funds and similar alterations. … Had the Department been aware of the extent of the changes, it may have required that the existing policyholders affirmatively opt in to the ATM Strategy.

(Compl. (Ex. 1), Ex. B, ¶¶ 8-9 (emphasis added).)[11]

32.	The Consent Order on which Plaintiff relies and has made part of her Complaint[12]

thus asserts that had AXA Equitable not made those purportedly "misleading" filings with the

---

[11]	The Consent Order expressly states that it "contains DFS's findings" — which AXA Equitable did not admit — "and the relief agreed to by DFS and AXA Equitable."  (Compl. (Ex. 1), Ex. B, at 2.)  AXA Equitable does not adopt the findings of the Consent Order, but references them here only for purposes of showing the nature of Shuster's purported claim, and reserves all of its rights with respect to Shuster's effort to rely upon that Consent Order.

DFS, the DFS may have required that Shuster and other policy holders "affirmatively opt in" to volatility-managed investment funds.  (Compl. (Ex. 1), Ex. B, ¶ 9.)  Her Complaint therefore alleges that AXA Equitable's purported misrepresentations and omissions to her and to the DFS made "a significant difference" to her ongoing investment decisions to purchase, sell, or hold accumulation units or to hold or surrender her policy in its entirety.  Troice, 134 S. Ct. at 1066; accord Rabin v. JPMorgan Chase Bank, N.A., No. 06-C-5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) ("Plaintiffs maintain that in furtherance of its scheme, Defendants misrepresented and omitted material facts to the [SEC] on Defendants' Registration Statements.   Had the SEC known the [facts], Plaintiffs contend that the SEC would have prevented the Registration Statements from becoming effective and Defendants would have been unable to sell shares of the Fund."); In Re LIBOR-Based Fin. Inst. Antitrust Litig., 935 F. Supp. 2d 666 (S.D.N.Y. 2013) (in addition to misrepresentations to plaintiffs, alleged "phony statements" to banking association "qualify as having been made 'in connection with' the purchase or sale of securities").

### Plaintiff's Action Also Alleges The Use Of "A Manipulative Or Deceptive Device Or Contrivance In Connection With The Purchase Or Sale Of A Covered Security"

33.	Plaintiff's Complaint alleges that AXA Equitable's "implementation of the volatility-management strategy reduced the returns of the Affected Funds held by Plaintiff and the other members of the Class," and that the strategy "substantially reduced the benefits to which Plaintiff and other members of the Class are entitled under the terms of their contracts with AXA."  (Compl. (Ex. 1), ¶¶ 29, 39.)

---

[12]   Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  The rule is the same in the New Jersey state court in which Plaintiff initially commenced this action.  N.J. Rule 1:4-3 ("A copy of a document which is an exhibit to a pleading is a part thereof.").

34. The Consent Order on which Plaintiff relies and has made part of her Complaint further alleges that AXA Equitable made filings with the DFS regarding the volatility management strategy that "had the effect of <u>misleading</u> the Department regarding the scope and potential effects" of that strategy.  (Compl. (Ex. 1), Ex. B, ¶ 8.)

35. Claims such as this one asserting self-interested manipulation or deception in connection with the purchase or sale of covered securities have been held to allege a "manipulative or deceptive device or contrivance" within the meaning of SLUSA, 15 U.S.C. § 78bb(f)(1)(B).  <u>See, e.g.</u>, <u>Montoya v. N.Y. State United Teachers</u>, 754 F. Supp. 2d 466, 473 (E.D.N.Y. 2010) (denying motion to remand putative class action claim based on allegedly concealed conflict of interest:  "Plaintiffs here allege the classic use of a manipulative or deceptive device, aimed here at increasing the payment of fees, rather than fulfillment of the duty to provide objective investment advice."); <u>Felton v. Morgan Stanley Dean Witter & Co.</u>, 429 F. Supp. 2d 684, 694 (S.D.N.Y. 2006) (similarly; cited in <u>Montoya</u>); <u>see also</u> <u>Dudek v. Prudential Sec., Inc.</u>, 295 F.3d 875, 880 (8th Cir. 2002) (similarly; "unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts").

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

36. AXA Equitable was served with the summons and complaint in this action on December 2, 2014.  (<u>See</u> Ex. 3 hereto.)  Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days of service on any defendant and is timely.  <u>See</u> <u>Murphy Bros. v. Michetti Pipe Stringing, Inc.</u>, 526 US. 344 (1999).

37. In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal in this Court, AXA Equitable will give written notice to Plaintiff and will file a true

14

copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law

Division, Camden County.

WHEREFORE, AXA Equitable respectfully removes this action from the Superior Court

of New Jersey, Law Division, Camden County, to the United States District Court for the District

of New Jersey, and the action is now properly before this District Court and all further

proceedings shall take place before this Court.


Dated:   December 29, 2014                              Respectfully submitted,

                                                        SKADDEN, ARPS, SLATE,
                                                          MEAGHER & FLOM LLP
                                                        (A Delaware Limited Liability Partnership)

                                                        By:  s/ Andrew Muscato
                                                             Andrew Muscato
                                                             (Andrew.Muscato@skadden.com)

                                                        Of Counsel:

                                                        Jay B. Kasner
                                                        (Jay.Kasner@skadden.com)
                                                        Kurt Wm. Hemr
                                                        (Kurt.Hemr@skadden.com)
                                                        SKADDEN, ARPS, SLATE,
                                                           MEAGHER & FLOM LLP
                                                        Four Times Square
                                                        New York, New York  10036
                                                        Telephone:  (212) 735-3000
                                                        Facsimile:  (212) 735-2000

                                                        *Attorneys for Defendant AXA Equitable*
                                                           *Life Insurance Company*

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

Pursuant to Local Civil Rule 11.2, we certify that the claims asserted in the above action implicate the same threshold legal issues as claims asserted in <u>Zweiman v. AXA Equitable Life Insurance Company</u>, No. 14-cv-5012 (VSB)(DCF), in the United States District Court for the Southern District of New York.  As such, AXA Equitable intends to move promptly pursuant to 28 U.S.C. § 1404(a) for transfer of this action to the Southern District of New York.

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP


By: <u>s/ Andrew Muscato</u>
       Andrew Muscato

*Attorney for Defendant AXA Equitable*
  *Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2014, a copy of the foregoing Notice of Removal to

the United States District Court for the District of New Jersey was served upon counsel for

Plaintiffs, by hand delivery, addressed as follows:

> Sung-Min Lee
> Barbara J. Hart
> David C. Harrison
> LOWEY DANNENBERG COHEN & HART, P.C.
> One North Broadway, Suite 509
> White Plains, NY 10601
>
> *Attorneys for Plaintiff*


s/ Andrew Muscato
Andrew Muscato


Dated:  December 29, 2014